## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 10 2016, 9:22 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Steven Knecht
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Dennis P. Gallivan,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 10, 2016

Court of Appeals Case No.
79A02-1507-CR-916

Appeal from the Tippecanoe
Superior Court

The Honorable Michael A.
Morrissey, Judge

Trial Court Cause No.
79D06-1307-FD-161

**Brown, Judge.**

[1] Dennis P. Gallivan appeals his sentence for operating while intoxicated as a class A misdemeanor and operating while being an habitual traffic violator as a class D felony. Gallivan raises two issues which we revise and restate as:

I. Whether the trial court improperly ordered that Gallivan pay extradition costs as a condition of probation; and

II. Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm in part, reverse in part, and remand.

## Facts and Procedural History

[2] On July 29, 2013, Gallivan, who had been deemed an habitual traffic violator and had a suspended license, drank eight or nine beers and drove a vehicle. He was a hazard to either himself or others because he was impaired. He was pulled over by the police because of "some erratic driving." Transcript at 17. The officer administered a breathalyzer test, and Gallivan tested .22.

[3] On July 30, 2013, the State charged Gallivan with Count I, operating while intoxicated as a class C misdemeanor; Count II, operating while intoxicated as a class A misdemeanor; Count III, being an habitual substance offender; and Count IV, operating while being an habitual traffic violator as a class D felony.

[4] On June 9, 2015, Gallivan pled guilty to operating while intoxicated as a class A misdemeanor, operating while being an habitual traffic violator as a class D felony, and being an habitual substance offender, and the court accepted the pleas and entered judgments of conviction.

[5] On July 1, 2015, the court held a sentencing hearing. Gallivan testified that he was in the Tippecanoe County Jail but was going to a federal facility in Ohio following the hearing. The court found Gallivan's guilty plea to be a mitigator, and noted three letters written on his behalf in which he was called a "good guy and non violent," but the court stated that the letters did not "really mitigate the fact that you've got all these OWI's; those aren't elements of – of this crime." *Id.* at 43. The court found his criminal history and the facts and circumstances of the case to be aggravators.

[6] The court ordered an aggregate sentence of nine years with five years executed, three years on community corrections, and one year suspended to probation, to be served consecutive to his sentence in a federal case.

[7] At the end of the hearing, the prosecutor stated that Gallivan had been transported from federal custody to Tippecanoe County, and the court also ordered that Gallivan be remanded back into federal custody.

[8] On September 21, 2015, the Tippecanoe County Sheriff's Office filed a document detailing $858.28 in transportation expenses for transporting Gallivan from Lisbon, Ohio, on June 2, 2015. On September 22, 2015, the court ordered Gallivan to pay $858.28 to the Tippecanoe County Sheriff as an additional term of probation.

## *Discussion*

### I.

[9]     The first issue is whether the trial court improperly ordered that Gallivan pay extradition costs as a condition of probation. Gallivan argues that the trial court lacked jurisdiction to order him to pay the expenses of his extradition because the July 1, 2015 sentencing order did not purport to retain any continuing jurisdiction and the court had no authority after sentencing him. He also contends that even if the trial court had jurisdiction to enter such an order, it would have been improper to do so without determining his ability to pay the costs. The State argues that the trial court had jurisdiction to modify the terms of probation, but acknowledges that a hearing was required before the extradition costs could be imposed as an additional term of probation, and that remand for a hearing may be proper.

[10]    Generally, "[a]fter final judgment, a court retains only such continuing jurisdiction as is permitted by the judgment itself or as is given the court by statute or rule." *King v. State*, 720 N.E.2d 1232, 1234-1235 (Ind. Ct. App. 1999) (citing *Marts v. State*, 478 N.E.2d 63, 65 (Ind. 1985)). Ind. Code § 35-38-2-1.8 provides that the "court may hold a new probation hearing at any time during a probationer's probationary period: (1) upon motion of the probation department or upon the court's motion; and (2) after giving notice to the probationer." Ind. Code § 35-38-2-1.8 also provides that "[a]t a probation hearing . . . the court may modify the probationer's conditions of probation."[1]

_____

[1] In its entirety, Ind. Code § 35-38-2-1.8 provides:

[11] Based upon Ind. Code § 35-38-2-1.8, we conclude that the trial court retained authority to modify Gallivan's conditions of probation but improperly did so by failing to hold a hearing. Accordingly, we reverse the court's order that Gallivan pay extradition costs as a condition of probation and remand for a hearing on the Sheriff's request and Gallivan's ability to pay. *See Vestal v. State*, 745 N.E.2d 249, 253 (Ind. Ct. App. 2001) (holding that the trial court could order the defendant to pay extradition costs and remanding for a hearing to address whether the defendant had the ability to pay the costs of his extradition), *summarily aff'd in relevant part*, 773 N.E.2d 805, 805 (Ind. 2002), *reh'g denied*.

## II.

---

(a) This section does not apply to the modification of a user's fee payment under section 1.7(b) of this chapter.

(b) The court may hold a new probation hearing at any time during a probationer's probationary period:

> (1) upon motion of the probation department or upon the court's motion; and
> (2) after giving notice to the probationer.

(c) At a probation hearing described in subsection (b), the court may modify the probationer's conditions of probation. If the court modifies the probationer's conditions of probation, the court shall:

> (1) specify in the record the conditions of probation; and
> (2) advise the probationer that if the probationer violates a condition of probation during the probationary period, a petition to revoke probation may be filed before the earlier of the following:
>
> > (A) One (1) year after the termination of probation.
> > (B) Forty-five (45) days after the state receives notice of the violation.

(d) The court may hold a new probation hearing under this section even if:

> (1) the probationer has not violated the conditions of probation; or
> (2) the probation department has not filed a petition to revoke probation.

[12]    The next issue is whether Gallivan's sentence is inappropriate in light of the nature of the offense and the character of the offender. Before addressing this issue, we note that both parties agree that the trial court imposed an aggregate sentence of nine years, but they assert a different calculation.[2] At the sentencing hearing, the court stated:

> I am going to accept the term recommended by both the State and probation.[3] On Count II, the OWI A Misdemeanor it will be one (1) year that will be enhanced by a period of three (3) years on the HSO and then on Count IV the HTV, D Felony it will be three (3) years. Counts II and IV will run concurrently so that will be a total of nine (9) years. I'm going to order five (5) years executed at Department of Corrections; three (3) years community corrections, on (1) year suspended to supervised probation.

Transcript at 44-45. After some discussion, the following exchange occurred:

> [Prosecutor]: I think I wrote down the numbers right. What was the HSO enhancement on the OWI?

---

[2] Gallivan asserts that the court sentenced him to "one year on Count II (Operating while Intoxicated as a Class A misdemeanor), enhanced by six years for Count III (Habitual Substance Offender); and three years on Count IV (Operating a Motor Vehicle while being an Habitual Traffic Violator)," and that the sentence on Count IV was ordered to be served concurrently with that on Count II, "for a total term of nine years." Appellant's Brief at 4. The State asserts that the court sentenced Collier to "one year upon the Class A misdemeanor which was enhanced to six years upon the habitual substance offender enhancement, and three years upon the Class D felony," and that he was sentenced "to an aggregate term of nine years . . . ." Appellee's Brief at 4.

[3] The probation officer recommended that the court sentence Gallivan to "one (1) year on Count II, six (6) years on Count III, and three (3) years on Count IV, with Counts II and IV to be served concurrently, to total nine (9) years in the Department of Correction, with six (6) years executed, the final three (3) years at a level to be determined, and three (3) years suspended on supervised probation . . . ." Appellant's Appendix at 88.

[Court]: Okay it was on Count II it was one (1) year the OWI A Misdemeanor that was enhanced by six (6) years . . .

[Prosecutor]: Six (6) years.

[Court]: . . . on the OWI and then Count IV, HTV D felony was three (3) years, but I'm running II and IV concurrently . . .

[Prosecutor]: Got yeah. That makes sense.

[Court]: . . . for a total of three (3).

[Prosecutor]: That makes sense.

[Court]: That's where the nine (9) comes from.

*Id.* at 48-49. The trial court's order states:

> The Court . . . sentences Defendant to 1 year on Count II, 6 years on Count III as a sentencing enhancement and 3 years on Count IV in custody of the Indiana Department of Correction/Tippecanoe County Sheriff. Sentence on Count II shall run concurrent with sentence on Count IV for a total sentence of 9 years in custody of the Indiana Department of Correction/Tippecanoe County Sheriff. . . . The Court suspends all of the fine and 1 year of the sentence of imprisonment and places Defendant in the custody of the Indiana Department of Correction/Tippecanoe County Sheriff for 5 years. Defendant is placed into Tippecanoe County Community Corrections at a level to be determined by the Executive Director of Community Corrections for 3 years.

Appellant's Appendix at 69.

[13] Based upon the foregoing, it appears that the trial court intended to impose an aggregate sentence of nine years as recommended by the probation officer, but misspoke when it stated that the count of operating while intoxicated as a class A misdemeanor was enhanced by six years. The court may have intended to enhance by six years the three-year sentence on the count of operating while being an habitual traffic violator as a class D felony, and order that sentence to be served concurrent with the sentence of one year for the offense of operating while intoxicated as a class A misdemeanor, for an aggregate sentence of nine years. Accordingly, we remand for clarification of the sentence in this regard.

[14] Nonetheless, given that the trial court expressed its intent to adopt the sentence recommended by the probation department of nine years and both parties agree that the aggregate sentence is nine years, we will address Gallivan's argument that his aggregate sentence is inappropriate. *See Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008) (holding that "appellate review should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count").

[15] Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[16] Gallivan argues it is not unusual to find that people with severe substance abuse problems exercise extremely poor judgment, and notes that no accident occurred, no one was injured, and no property was damaged. He acknowledges his criminal history but states that he has a redeemable character and points to his military service and employment history. He requests that we revise his aggregate sentence to three years in community corrections and two years of supervised probation. The State argues that Gallivan's sentence is not inappropriate in light of his extensive criminal history and points to the facts that his BAC was over twice the legal limit, his license was suspended, and his driving prompted multiple 911 calls.

[17] Our review of the nature of the offense reveals that Gallivan, an habitual traffic violator with a suspended license, drank eight or nine beers and drove his vehicle. He was a hazard to himself and others because he was impaired. The police pulled him over because of "some erratic driving," and he tested .22. Transcript at 17.

[18] Our review of the character of the offender reveals that Gallivan pled guilty, and the presentence investigation report ("PSI") indicates that his only son was murdered in 2005. A letter from Gallivan's former wife indicates that the death has been very difficult on him. According to the PSI, Gallivan was unemployed at the time of the offense but had worked as a construction foreman between 1974 and 1999, and as a laborer between 2008 and 2012 when he left due to "work slowing down." Appellant's Appendix at 85. He enlisted in the United States Army in 1971 and received an honorable discharge in 1973.

[19] The PSI indicates that Gallivan reported first consuming alcohol at the age of fifteen, and when asked what role drugs or alcohol played in the instant offense, he answered: "All of it." *Id.* at 86. He denied having any record of substance abuse treatment, but the probation officer completing the PSI noted that Gallivan was ordered to complete: (1) counseling in 1986; (2) "CSCASP evaluation and any recommended treatment and/or education" in 1993; (3) "New Directions alcohol and drug evaluation, education, and any recommended counseling" in 1999; and (4) "Court Services alcohol education program" in 2005. *Id.* He reported that he was in a drug and alcohol program at the federal correctional facility but has "to re-do that because [he] missed too many classes on that." Transcript at 32.

[20] Gallivan was convicted of operating a vehicle while intoxicated as a class D felony in 1986, operating a vehicle while intoxicated as a class A misdemeanor in 1993, operating a vehicle while intoxicated as a class A misdemeanor in 1999, and two counts of operating a vehicle while intoxicated as class D felonies and being an habitual substance offender in 2005. While out on bond in the present case, Gallivan was charged with aggravated bank robbery and brandishing a firearm during a crime of violence, and he was convicted of these offenses on May 20, 2014. Three petitions to revoke probation have been filed against him with two petitions found true. He twice violated rules of community corrections. His overall risk assessment score placed him in the moderate risk to reoffend category.

After due consideration of the trial court's decision, and in light of Gallivan's criminal history, we cannot say that the aggregate sentence of nine years with five years executed, three years on community corrections, and one year suspended to probation is inappropriate in light of the nature of the offense and the character of the offender.

## *Conclusion*

For the foregoing reasons, we affirm Gallivan's sentence, reverse the trial court's order that Gallivan pay the extradition costs as a condition of probation, and remand for a correction of the sentencing order and for a hearing regarding the extradition costs.

Affirmed in part, reversed in part, and remanded.

Kirsch, J., and Mathias, J., concur.